**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| **MDSAVE, INC. and MDSAVE SHARED SERVICES, INC.,** *Plaintiffs,* <br><br> *v.* <br><br> **SESAME, INC.,** *Defendant.* | 6:21-CV-01338-ADA <br><br> **PUBLIC VERSION** |

<u>**SEALED MEMORANDUM OPINION AND ORDER**</u>

    Came on for consideration this date is Defendant Sesame, Inc.'s ("Defendant" or "Sesame") Motion to Dismiss for Lack of Personal Jurisdiction, Improper Venue, and Failure to State a Claim, filed February 14, 2022. ECF No. 27 (the "Motion"). Plaintiffs MDSave, Inc. and MDSave Shared Services, Inc. (collectively, "Plaintiffs" or "MDSave") filed a response on May 31, 2022, ECF No. 75, to which Sesame filed a reply on June 14, 2022, ECF No. 79. The Court heard oral arguments on this Motion on December 14, 2022. *See* ECF No. 103. After careful consideration of the Motion, the parties' briefs, oral arguments, and the applicable law, the Court **GRANTS** Sesame's Motion to Dismiss MDSave's patent claims pursuant to Rule 12(b)(3) for improper venue. It further **GRANTS-IN-PART** Sesame's Motion to Dismiss MDSave's non-patent claims pursuant to 12(b)(2). It further **DENIES** Sesame's Motion to Dismiss MDSave's remaining non-patent claims pursuant to 12(b)(3). And, finally, it **GRANTS-IN-PART** and **DENIES-AS-MOOT-IN-PART** Sesame's alternative motion under Rule 12(b)(6).

## I. BACKGROUND

    Sesame is a direct-to-patient care online marketplace that connects patients with quality doctors at cash prices. Sesame is a Delaware corporation with a place of business in New York. ECF No. 4 ("Am. Compl.") ¶ 17. MDSave filed suit against Sesame on December 21, 2021. ECF

No. 1. MDSave filed a First Amended Complaint ("Amended Complaint") on January 4, 2022. ECF No. 4. According to its Amended Complaint, both Plaintiffs are Delaware corporations with principal places of business in Brentwood, Tennessee. Am. Compl. ¶¶ 15–16. MDSave "operates in 36 states, offering more than 1,700 procedures and partnering with more than 300 hospitals across the country." *Id.* ¶ 5. The Amended Complaint alleges ten claims for relief against Sesame, which comprise patent claims and non-patent claims, as set forth below.

Patent Claims: The Amended Complaint alleges that Sesame infringes two patents: U.S. Patent Nos. 9,123,072 (Claim 10) and 11,170,423 (Claim 11) (collectively, the "Patent Claims"). *Id.* ¶¶ 75–86.

Non-Patent Claims: The Amended Complaint also includes eight claims for relief against Sesame unrelated to the Patent Claims. These "Non-Patent Claims" fall into two buckets: the Lanham Act Claims and the Web Scraping Claims. First, MDSave alleges three claims for relief under the Lanham Act (collectively, the "Lanham Act Claims"): False Advertising and Unfair Competition under 15 U.S.C. § 1125(a) (Claims 1 and 3, respectively) and Trademark Infringement under 15 U.S.C. § 1114 (Claim 2). The False Advertising claim alleges that Sesame's statement on its website that it maintains relationships with healthcare providers is false because, upon information and belief, Sesame does not have "pre-existing relationships with these providers and [is] only listing [their] procedures and services . . . because [Sesame has] stolen MDSave's data." Am. Compl. ¶ 88. MDSave's Trademark Infringement and Unfair Competition claims are both based on the same underlying allegation that now-dismissed Defendant Green Imaging has improperly used MDSave's protected trademarks by selling vouchers for medical services that contain MDSave's trademarks, *id.* ¶¶ 70, 96, 104, and that Sesame "re-sell[s] MDSave vouchers that Green Imagining [sic] has wrongly and without authorization altered or fabricated," *id.* ¶¶ 98,

105. Second, MDSave alleges five claims for relief that are based on Sesame's alleged wrongful "scraping" of data from MDSave's public website and are, accordingly, referred to herein as the "Web-Scraping Claims." Specifically, MDSave alleges that "hundreds" of listings on Sesame's website are also available on MDSave's website and that "the only way to wholesale copy MDSave's data, absent performing millions of manual searches, is using illegal and improper computer-implemented web scraping tools across state lines via the public internet." Am. Compl. ¶¶ 45, 47, 57. MDSave further alleges that they have "documented instances of MDSave's website being scraped" and that "[c]ertain of these attacks derived from IP addresses in New York, New York where Sesame . . . [is] based." *Id.* ¶ 48. Based on these allegations, MDSave purports to state a claim for violation of the Computer Fraud and Abuse Act ("CFAA") (Claim 4) and the Texas Harmful Access by Computer Act ("THACA") (Claim 5). *Id.* ¶¶ 113, 125. In addition, MDSave alleges that this same conduct "constitutes unfair competition under the common law of the State of Texas" (Claim 6). *Id.* ¶ 133. MDSave also brings a claim of Civil Conspiracy (Claim 7), alleging that all three Defendants "conspired with each other to commit offenses against the laws of the State of Texas, including [THACA]." *Id.* ¶ 140. Finally, MDSave alleges that Sesame tortiously interfered with MDSave's prospective business relationships (Claim 9) by "st[ealing] and exploit[ing] MDSave's protectable data, including by illegally scraping MDSave's website." *Id.* ¶ 155.

Defendant's Motion is now ripe, and the Court will consider its grounds for relief in turn.

## II. LEGAL STANDARD

### A. Dismissal for Improper Venue

Section 1400(b) of title 28 of the United States Code "constitute[s] the exclusive provision controlling venue in patent infringement proceedings." *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1518 (2017) (internal quotation marks omitted). A claim for patent

infringement must be brought "in the judicial district where the defendant resides" or "where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b); *see also Optic153 LLC v. Thorlabs Inc.*, No. 6:19-CV-00667-ADA, 2020 WL 3403076, at *2 (W.D. Tex. June 19, 2020). Section 1400(b) is intentionally restrictive, and it is the plaintiff's burden to establish proper venue. *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1013–14 (Fed. Cir. 2018).

Under the first prong, the Supreme Court has held that "a domestic corporation 'resides' only in its State of incorporation for purposes of the patent venue statute." *TC Heartland*, 137 S. Ct. at 1517. Under the second prong, the Federal Circuit interpreted a "regular and established place of business" to impose three general requirements: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *In re Cray Inc.,* 871 F.3d 1355, 1360 (Fed. Cir. 2017)*.* Regarding the first requirement, a "place" refers to a "'building or a part of a building set apart for any purpose' or 'quarters of any kind' from which business is conducted." *Id.* at 1362 (citations omitted). Regarding the second requirement, "regular" means that the business must operate in a "'steady, uniform, orderly, and methodical' manner," and "sporadic activity cannot create venue." *Id*. (citations omitted). And the third requirement means that the place cannot be solely a place of the defendant's employee—"the defendant must establish or ratify the place of business." *Id.* at 1363. Failure to satisfy any statutory requirement requires a finding of improper venue. *Id.*

## B. Dismissal for Lack of Personal Jurisdiction

Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss a claim if the court does not have personal jurisdiction over the defendant. Because the issue of whether this Court has personal jurisdiction over Defendant's non-patent claims is not unique to patent law, the Court will apply the law of the Fifth Circuit. *See In re Cray*, 871 F.3d 1355, 1360 (Fed. Cir. 2017). The

plaintiff has the burden of establishing jurisdiction. *Patterson v. Aker Sols. Inc.*, 826 F.3d 231, 233 (5th Cir. 2016). Personal jurisdiction exists where the forum state's long-arm statute extends to the nonresident defendant and the exercise of jurisdiction comports with due process. *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019). "Because Texas's long-arm statute is coextensive with the Due Process Clause of the Fourteenth Amendment, the two inquiries merge." *Id.* To meet the requirements of the due process clause, the non-resident must have some minimum contacts with the forum which result from an affirmative act or acts, and it must not be unfair or unreasonable to require the non-resident to defend the suit in the forum state. *D.J. Invs., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 545 (5th Cir. 1985).

" 'Minimum contacts' can be established either through contacts sufficient to assert specific jurisdiction, or contacts sufficient to assert general jurisdiction." *Frank v. P N K (Lake Charles) L.L.C.*, 947 F.3d 331, 336 (5th Cir. 2020) (citation omitted). General jurisdiction exists over a non-resident defendant when its "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Id.* Specific jurisdiction exists where the plaintiff alleges a cause of action which grows out of or relates to a contact between the defendant and the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). Elements which must exist for the court to exercise specific jurisdiction are: (1) the foreign defendant must purposely direct his activities at residents of the forum and (2) the cause of action must arise from or be connected with such activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 47273 (1985). Specific jurisdiction may be established if the defendant's conduct constituted only one act in the forum state and that act is substantially related to the suit. *See Moncrief Oil Int'l v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007). However, it is essential that in each case there is an act by which the defendant purposefully availed

itself of the benefits and protections of the forum state. *Hanson v. Denkla*, 357 U.S. 235, 253 (1958).

Conversely, general jurisdiction occurs when "a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum ..." *Helicopteros*, 466 U.S. at 414 n.9. General jurisdiction over a corporation is only appropriate where "the corporation is fairly regarded as "at home" such as in its "place of incorporation[ ] and principal place of business." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). In turn, generally, a corporation's "home" falls in two paradigmatic places: (1) the state of incorporation and (2) the state where it has its principal place of business. *Frank*, 947 F.3d at 337. But a company is also deemed "at home" when " 'the continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit ... on causes of action arising from dealings entirely distinct from those activities' "—which more than likely is the business's domicile. *See id.* Accordingly, "the [general jurisdiction] inquiry ... is not whether a foreign corporation's in-forum contacts can be said to be in some sense continuous and systematic, it is whether that corporation's affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State." *Id.*

### C.   Dismissal for Failure to Sufficiently Plead a Claim for Relief

In patent cases, issues that are unique to patent law are governed by Federal Circuit law. *See Woods v. DeAngelo Marine Exhaust, Inc.*, 692 F.3d 1272, 1279 (Fed. Cir. 2012). But because motions to dismiss under Rule 12(b)(6) raise purely procedural issues, in patent cases, courts apply the law of the regional circuit—in this case, the Fifth Circuit—when deciding whether such a motion should be granted. *See In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1331 (Fed. Cir. 2012).

Rule 12(b)(6) requires that a complaint contain sufficient factual matter, if accepted as true, to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this factual plausibility standard, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," based on "more than a sheer possibility that a defendant has acted unlawfully." *Id*. "Threadbare recitals of the elements of a cause of action, supported mere conclusory statements, do not suffice." *Id*. In resolving a motion to dismiss for failure to state a claim, the question is "not whether [the plaintiff] will ultimately prevail, . . . but whether [the] complaint was sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 529–30 (2011). "The court's task is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Iqbal*, 556 U.S. at 678).

### III. ANALYSIS

#### A.    This District Is Not a Proper Venue for Plaintiffs' Patent Law Claims Against Defendant

Defendants move to dismiss this Plaintiffs' patent law claims for lack of venue pursuant to Rule 12(b)(3). The Motion argues that Defendant does not reside in the Western District of Texas and has no regular and established place of business in this District. ECF No. 27 at 4–5. As explained below, the Court agrees.

There is no dispute that Sesame is incorporated in Delaware and therefore does not "reside" in the Western District of Texas. *See TC Heartland*, 137 S. Ct. at 1517 ("[A] domestic corporation 'resides' only in its State of incorporation for purposes of the patent venue statute."); Am. Compl.

¶ 17. Therefore, Plaintiffs must show that Defendants have a regular and established place of business in this District.

As it did in its December 14 hearing, the Court finds that Plaintiffs have failed to show that Defendant has a "regular and established business" in the WDTX. Sesame argues that the Amended Complaint includes no allegations that would satisfy any one of the three *In re Cray* requirements for Sesame. ECF No. 27 at 5. The Federal Circuit has interpreted a "regular and established place of business" to impose three requirements: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017).

MDSave responds that each of the *Cray* factors is met in the WDTX because Sesame's regular and established place of business is the physical locations of providers because (a) they are agents of Sesame's business, (b) they conduct Sesame's business, and (c) Sesame has ratified them as Sesame's places of business. ECF No. 75 at 13–17.  For the first factor, MDSave argues that this factor is met because the providers have physical place in the WDTX. *Id.* For the second factor, MDSave argues that Sesame's providers are Sesame's agents conducting sesame's business in the WDTX. *Id.* MDSave argues that Sesame controls the providers sufficiently to constitute a principal and agent relationship. *Id.* Sesame allegedly provides them with step-by-step directions and exercises control over all relevant aspects of the treatment of the patient. *Id.* According to MDSave, Sesame identifies the specific medical procedure to be provided, the appointment time, payment procedures, and, most importantly, how the procedure should be performed. And for the third factor, MDSave again argues that the locations of Sesame's providers are the place of Sesame. *See id.*

Sesame replies that Sesame's new agency theory is not supported by the complaint and is also not supported by the law or facts. ECF No. 79 at 2–6. According to Sesame, MDSave asks this Court to find that Sesame, which hosts an online marketplace connecting patients and providers, is a principal that exerts control over those providers—here, Quest Diagnostics ("Quest") and Green Imaging ("GI"). *Id.* Sesame asserts that GI and Quest are not the agents of Sesame. *Id.* Sesame explains that "it strains credulity to argue that Sesame, an internet startup, exercises control over the way medical providers perform medical tests and treatment on medical patients." *Id.* Sesame further argues that MDSave also fails to establish, as required by *Cray*, that GI and Quest conduct Sesame's business and that Sesame has ratified the physical locations as its own places of business. *Id.* According to Sesame, it also has not ratified the providers' physical locations as its own. *Id*

The Court finds that MDSave fails to demonstrate the requisite level of control to establish an agency relationship or that Sesame has ratified the physical locations of these providers as its own places of business. The single case cited by MDSave where the court found an agency relationship, *AGIS*, is readily distinguishable from the facts presented to the Court here. *See AGIS Software Dev. LLC v. Google LLC*, No. 2:19-CV-00361-JRG, 2022 WL 1511757, at *4–5 (E.D. Tex. May 12, 2022). There, the principal's control was substantial: the principal, Google, required the agent, CTDI, to have Google-specific account representatives and Google-specific human resources; Google directed CTDI as to which products it could repair and which it could not; Google provided specifications for CTDI's physical facilities; and Google maintained sole discretion over CTDI's purchasing and the vendors from which they could purchase. *AGIS*, 2022 WL 1511757, at *4–5. Based on these allegations, the court found that agency had been adequately pleaded because Google provided CTDI with "step-by-step instructions" directing CTDI's

performance of the service that Google was offering to Google customers. *Id.* at 5. These facts bear no resemblance to Sesame's relationship with GI and Quest, as Sesame exerts no interim control over their services or physical locations (anywhere, including in this District).

As for the physical location, the contrast with the facts in *AGIS* compels this Court to find otherwise; there, Google advertised to customers that Google was the provider of repairs and in all interactions with the consumer there was never any suggestion that anyone other than Google was providing the service. *AGIS*, 2022 WL 1511757, at *18 ("[B]y Google's own admission, '[Customers] are not even aware of CTDI.'"). Here, Sesame states that these are the providers' locations—not Sesame's. *See* ECF No. 75-10 (directing customers to "Quest Diagnostics 7125 Sanger Avenue Waco, TX 75701").

This Court will not, therefore, find that Plaintiffs have met their burden in showing that Defendant has a regular and established place of business in this district as required by *In re Cray*. 871 F.3d at 1360. Accordingly, Plaintiffs patent law claims are hereby dismissed pursuant to Rule 12(b)(3).

## B.    This Court Has Personal Jurisdiction Over Only Some of Plaintiffs' Non-Patent Claims

Because the Court held above that Plaintiffs' non-patent claims should be dismissed, the Court now considers Defendant's Motion to dismiss pursuant to Rule 12(b)(2) for lack of personal jurisdiction but only in regard to Plaintiff's non-patent claims. The Court concludes that it has personal jurisdiction over only some of Plaintiffs' non-patent claims.

Because the Amended Complaint does not allege that Sesame is subject to this Court's general jurisdiction, MDSave must establish specific jurisdiction for each of its claims. *Frank*, 947 F.3d at 336. The Fifth Circuit divides the specific personal jurisdiction analysis into three logical steps. *See Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 317–18 (5th Cir. 2021). First,

the court assesses whether the defendant "purposefully avail[ed] itself of the privilege of conducting activities in the forum State." *Id.* Second, the court considers whether the claims in the action "arise out of or relate to" those purposeful contacts. *Id.* This step embodies the principle that "[a] defendant may have many meaningful ties to the forum, but if they do not connect to the plaintiff's claim, they cannot sustain [the court's] power to hear it." *Id.* Third, the court must find that the exercise of jurisdiction is "fair and reasonable" to the defendant. *Id.*

MDSave argues that personal jurisdiction is proper over MDSave's non-patent claims because the exercise of personal jurisdiction is proper in situations involving "fully interactive" websites, but not "passive" ones. ECF No. 75 at 8 (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)). MDSave argues that Sesame's website easily meets this test because Sesame's website allows Sesame's patients to "conduct business" with Sesame over the internet. *Id.* Accord to MDSave, Sesame's website targets users by their city and creates a customized page based on the location of the user, which Sesame tracks by their IP address. *Id.* MDSave also relies on the fact that Sesame's website also allows users to browse for, select, and complete purchases of medical services directly through the website, and prompts users to create an account, and share electronic files containing personal, contact, billing, and medical information, and then keeps a customer's information for up to seven years. *See id.*

Sesame responds by explaining that the Fifth Circuit recently clarified this past December, interactivity is merely a "prerequisite to our standard jurisdictional inquiry." *See, e.g.*, ECF No. 27 at 7–8 (citing *Johnson*, 21 F.4th at 319). Here, Sesame contends that Sesame's website contacts are insufficient for personal jurisdiction since Texas was neither the focal point of the alleged torts nor the harm suffered. *See id.*

11

The asserted Non-Patent Claims fall into two categories: the Web-Scraping Claims and the Lanham Act Claims. MDSave has conceded that it has personal jurisdiction over the Lanham Act claims only. ECF No. 75 at 11 ("the exercise of personal jurisdiction for the Computer Protection Claims is appropriate since the claim arise out of or relates to those activities relating to the False Advertising Claims."). Thus, MDSave argues that it has pendent personal jurisdiction over the web-scraping claims. *See id.*

The Court finds that Sesame's arguments regarding personal jurisdiction for the Lanham Act claims are unpersuasive. The Court agrees with MDSave and finds that Sesame's website meets the *Zippo* test that was adopted by the Fifth Circuit in *Mink v. AAA Development LLC*, 190 F.3d 333, 336–37 (5th Cir. 1999). Sesame has "purposefully availed [itself] of the benefits and protections of the [Western District]" such that it should reasonably anticipate being haled into court there. Moreover, this Court has a legitimate interest in adjudicating this dispute because Sesame allegedly targets Texas residents, harvests their information, falsely advertises to them, deceives them, and then attempts to involve local Texas doctors to fulfill its improperly obtained order.

Yet MDSave makes no jurisdictional argument for its remaining claims, including its patent claims, other than to argue that the Court should exercise pendent jurisdiction over the Web-Scraping Claims. ECF No. 75 at 11. Pendent personal jurisdiction is only appropriate where the claims arise out of a "common nucleus of operative fact" and would be expected to be brought in a single lawsuit. *Bargrizan v. Texas Growth Fund Project I, LP*, No. 1:20-CV-1261-DAE, 2021 WL 7184957, at *5 (W.D. Tex. Sept. 1, 2021). Some of our sister courts in this Circuit find that the pendent jurisdiction claims must be "nearly identical or substantially overlap" with the claims on which this Court does have jurisdiction. *Pension Advisory Grp., Ltd. v. Country Life Ins. Co.*,

771 F. Supp. 2d 680, 696 (S.D. Tex. 2011). Sesame asserts that because MDSave's Lanham act claim is based on the allegation that Sesame is falsely stating that it can connect customers with providers, the factual issues underlying this allegation do not overlap with any of MDSave's other claims. ECF No. 79 at 8–9. MDSave merely makes a conclusory statement that "the exercise of personal jurisdiction for the Computer Protection Claims is appropriate since the claim arise out of or relates to those activities relating to the False Advertising Claims." ECF No. 75 at 11.

Here, MDSave's Web-Scraping Claims allege that Sesame improperly accessed MDSave's proprietary information, and its Patent Claims allege that Sesame infringed certain of MDSave's patents related to bundling of health services. Where, as here, there is not a single common element, much less an identity of elements, between the various claims, the Court finds that the pendent jurisdiction doctrine does not apply. Accordingly, all other claims are dismissed for lack of personal jurisdiction.

## C.    This District Is a Proper Venue for Plaintiffs' Lanham Act Claim Against Defendant

Because the Court has dismissed all of Plaintiffs' other claims above, the only remaining claims are MDSave's Lanham Act claims. Under the federal general venue statute, 28 U.S.C. § 1391, which governs venue for these claims, a civil action may be brought in: (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action. 28 U.S.C. § 1391(b).

Sesame argues that MDSave cannot show that venue is proper for Sesame in this Court under any of § 1391(b)'s three provisions. ECF No. 27 at 15. *First*, Sesame contends that venue is not proper under §1391(b)(1) because Sesame does not reside in Texas, let alone the Western District. *See id.*; 28 U.S.C. § 1391(c)(2). *Second*, Sesame asserts that venue is not proper under § 1391(b)(2) because the Amended Complaint does not—and cannot—allege that the Western District of Texas is where a substantial part of the events or omissions giving rise to any of the claims against Sesame occurred. *Id.* at 15–16. *Third*, Sesame explains that the Amended Complaint does not—and cannot—allege that there is no other judicial district in which this action may otherwise be brought under § 1391(b)(1) or § 1391(b)(2) so as to allow MDSave to rely upon the "catchall" or "fallback" alternative provided in § 1391(b)(3). *Id.* at 16. Accordingly, Sesame argues that the Non-Patent Claims should also be dismissed under Federal Rule 12(b)(3) for improper venue. *Id.*

MDSave responds that venue is proper in the Western District for the non-patent claims under § 1391(b)(2) because a substantial part of the events giving rise to these claims against Sesame occurred in the Western District. ECF No. 75 at 11–12. MDSave contends that its allegation that Sesame's website falsely advertises medical services from healthcare providers located in the Western District to residents in the Western District as being a substantial part of the events giving rise to its Lanham Act claims. *Id.*

Sesame replies that MDSave's reasoning for finding venue in the WDTX would also be true for the other ninety-three federal judicial districts. ECF No. 79 at 9. According to Sesame, accepting MDSave's argument would therefore improperly read out the requirement that the connection with the venue must be "substantial."  *Id.*

The Court finds that venue is proper for Plaintiffs' Lanham Act Claims. In the Western District of Texas, "venue may be properly laid in more than one district," and the "substantial part of the events or omissions test does not require that the chosen venue be the best venue . . . the selected district must simply have a substantial connection to the claim." *Zurich Am. Ins. Co. v. Tejas Concrete & Materials Inc.*, 982 F. Supp. 2d 714, 722 (W.D. Tex. 2013). Here, the evidence thus presented shows that it is plausible that a substantial part of the events in this case occurred in the Western District of Texas. Sesame has made ███████ sales of anonymized listings to residents in Texas between September 30, 2021, to January 5, 2022. ECF No. 75-6 at Line 7 (showing total bookings from "Anonymized" listings in Texas). Sesame could not provide any reason why the information they produced was incomplete. ECF No. 28-1 at 90:25–91:15. Sesame also refused to break down this information by jurisdiction. *Id.* at 103:14–18 ("[Exhibit E] only indicates that at the time of the booking or of the appointment, the customer's IP address was in the state of Texas."). Notably, Sesame has never disputed that it has made sales to the Western District, and indeed, lists many anonymized providers residing in the Western District on its website. ECF No. 75-13 at rows 33, 60, 77, 152, 205, 207, 216, 259, 419, 1169 (listing some examples of anonymized providers in Austin and Waco). The Court is therefore persuaded that Plaintiffs have shown that a substantial part of the events or omissions giving rise to the claim occurred in the Western District of Texas and that venue is proper here over the Lanham Act Claims pursuant to § 1391(b)(2).

### D.  Failure to State a Claim

Defendant moves to alternatively dismiss Plaintiffs' Trademark, THACA, Civil Conspiracy, and Tortious Interference with Prospective Business Relations claims under Rule 12(b)(6) for failure to state a claim. ECF No. 27 at 16–19. As explained above, however, the Court holds that all claims other than Plaintiffs' Lanham Act claims should be dismissed. Therefore, the

Court finds that Defendant's Motion is MOOT as to all claims other than Plaintiffs' Lanham Act claims. The Court now considers whether to dismiss Plaintiffs' Lanham Act claims under Rule 12(b)(6).

To state a trademark infringement claim under the Lanham Act, a plaintiff must establish that: "(1) [plaintiff] possesses the mark; (2) the defendant used the mark; (3) the defendant's use of the mark occurred in commerce; (4) the defendant used the mark in connection with the sale, offering for sale, distribution, or advertising of goods or services; and (5) the defendant used the mark in a manner likely to confuse consumers." *Bell v. Crawford Indep. Sch. Dist.*, No. 6:19-CV-268-ADA, 2020 WL 5370592, at *6 (W.D. Tex. Feb. 13, 2020). Likewise, MDSave's Lanham Act Unfair Competition claim requires "use[] in commerce" of the "word, term, name, symbol, or device . . . ." 15 U.S.C. § 1125(a).

Sesame argues that MDSave's Trademark and Unfair Competition claims (Claims 2 and 3) (which are both premised on the allegation that Sesame used "MDSave's Marks") should be dismissed under Rule 12(b)(6). ECF No. 27 at 16. According to Sesame, MDSave has failed to plead sufficient facts to plausibly allege that Sesame actually used any of the MDSave trademarks, much less that Sesame's use of the trademarks occurred in commerce in connection with the sale of goods or services and in a manner likely to cause confusion. *Id.* at 16–17. Sesame argues that MDSave's trademark allegations are focused entirely on third-party Green Imaging. *Id.* at 17 (citing Am. Compl. ¶¶ 63, 70).  According to Sesame, the only allegation in the claims for relief with respect to Sesame is the implication that Sesame is "re-sell[ing] MDSave vouchers that Green Imaging [sic] has wrongly and without authorization altered or fabricated." *Id.* (citing Am. Compl. ¶¶ 98, 105). Critically, Sesame asserts that at no point in the Amended Complaint does MDSave allege that Sesame has improperly used MDSave's trademarks in commerce. *Id.* Sesame,

however, does not explain why this Court should dismiss MDSave's other Lanham Act claim—False Advertising under 15 § 1125(a).

Plaintiffs failed to respond to Defendant's arguments regarding dismissing Trademark and Unfair Competition claims pursuant to Rule 12(b)(6). *See generally*, ECF No. 75. Thus, the Court finds that these claims should be dismissed as unopposed. Even if Plaintiffs had responded to Defendant's arguments on this point, the Court would have still found that they should be dismissed under rule 12(b)(6). MDSave has failed to plead sufficient facts to plausibly allege that Sesame actually used any of the MDSave trademarks, much less that Sesame's use of the trademarks occurred in commerce in connection with the sale of goods or services and in a manner likely to cause confusion. Because Plaintiffs failed to plead an element of each claim of relief, the Court must dismiss Claims two and three of Plaintiffs' Amended Complaint. *See Bell*, 2020 WL 5370592, at *6; 15 U.S.C. § 1125(a).

Because Defendant did not move to dismiss Plaintiffs' False Advertising claims under 15 § 1125(a), the Court finds that this claim should not be dismissed under Rule 12(b)(6).

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Sesame's Motion to Dismiss MDSave's patent claims pursuant to Rule 12(b)(3) for improper venue is **GRANTED**.

**IT IS FURTHER ORDERED** that Sesame's Motion to Dismiss MDSave's non-patent claims pursuant to 12(b)(2) is **GRANTED-IN-PART**. The Court **DENIES** Sesame's Motion to Dismiss MDSave's Lanham Act Claims, but the Court **GRANTS** Sesame's Motion to Dismiss MDSave's other non-patent claims.

**IT IS FURTHER ORDERED** that Sesame's Motion to Dismiss MDSave's remaining non-patent claims pursuant to 12(b)(3) is **DENIED**.

**IT IS FINALLY ORDERED** that Sesame's alternative Motion to dismiss pursuant to 12(b)(6) is **GRANTED-IN-PART** and **DENIED-AS-MOOT-IN-PART**. The Court **GRANTS** Sesame's Motion as to Claims two and three of Plaintiffs' Amended Complaint. The Court **DENIES** Sesame's Motion as to Claim one of Plaintiffs' Amended Complaint (Plaintiffs' False Advertising claims under 15 § 1125(a)). And finally, the Court **DENIES-AS-MOOT** Plaintiffs' remaining alternative motions under 12(b)(6).

Having ordered dismissal of Plaintiffs' Trademark and Unfair Competition claims without prejudice under Rule 12(b)(6), the Court **GRANTS** leave for Plaintiff to file an amended complaint within 14 days hereof.

**SIGNED** this 11th day of January, 2023.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE